HARRY REIN, Appellant, *v.* STAR COMPANY, INC., Respondent.

First Department, May 27, 1921.

Libel — publication of article charging plaintiff with arrest for dealing in stolen securities — complaint containing no denial of plaintiff's arrest insufficient.

Complaint in an action for libel setting forth the alleged libelous article to the effect that plaintiff had been arrested for dealing in stolen securities, *held,* insufficient because there was no denial of the fact that plaintiff had been arrested.

CLARKE, P. J., dissents, with memorandum.

APPEAL by the plaintiff, Harry Rein, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York

on the 17th day of January, 1921, denying plaintiff's motion for▸ judgment on the pleadings and sustaining defendant's demurrer to the complaint.

*Harold B. Elgar* of counsel [*Henry D. Bulkley* with him on the brief; *Hardin & Hess*, attorneys], for the appellant.

*William A. DeFord* of counsel [*John T. Sturdevant* with him on the brief], for the respondent.

DOWLING, J.:

The complaint herein sets forth in the 6th paragraph thereof the publication by defendant in its newspaper on July 21, 1919, of an article headed " New Way To Get Rid Of Stolen Securities," and refers to the same transaction set forth in the accompanying appeal in the case of *Rein* v. *Sun Printing & Pub. Assn.* (196 App. Div. 873). This article after setting forth the transaction between Bennett and Cowl, by which Bennett agreed to invest $500 in Cowl's business if he would dispose of some shares of Gulf Corporation for him, proceeds: " This Mr. Cowl did, he says, offering the stock for sale through Harry Rein, office manager for A. Risse & Co., of No. 50 Broadway, and realizing $2,383.50, of which amount all but $500, according to Mr. Cowl's affidavit, was turned over to Bennett."

It further sets forth a second visit by Bennett who left with Cowl ten Interborough Rapid Transit Company first refunding mortgage bonds, of the face value of $1,000 each, and requested Mr. Cowl to secure a loan of $5,000 thereon, retaining one-fifth thereof and turning the balance, less brokerage, over to him, and then proceeds: " Mr. Cowl said he again visited Mr. Rein and the loan was obtained, the bonds being deposited as security. Mr. Rein obtained the money from the Scandinavian Trust Company, and the $4,000 was turned over to ' Bennett,' according to Mr. Cowl and Alexander Nelson Scott, of No. 562 West One hundred and forty-fourth Street, in the Cafe Savarin. Later in the same day the Trust Company learned that the securities had been stolen, caused Rein to be arrested, and Rein, in company

with two detectives, met Mr. Cowl at the Grand Central Station, where Mrs. Cowl was with him waiting for a train, and informed him that he was also under arrest. Mr. Cowl, according to his affidavit, was taken before Magistrate Ten Eyck and held in $2500 bail."

The complaint sets forth:

" *Seventh.* The defendant at the time of the publication of the said article well knew the premises and maliciously contrived and intended to, and by said publication did, injure the plaintiff in his said business, and by said article held the plaintiff up to public hatred, contempt and ridicule in so far as it related to him, and said article was a false, defamatory, scandalous and malicious libel upon plaintiff and his reputation.

" *Eighth.* By the said article the defendant meant and intended it to be understood, and by persons who read the said article it was understood to mean and charge that the plaintiff had been arrested and charged with criminally receiving stolen property and with participation in a criminal conspiracy and that the plaintiff was an untrustworthy man."

As in the accompanying case, there is here no denial (as I view the allegations of the complaint) of the fact that plaintiff was in fact arrested. It will be noted that this article contains specific detailed facts as to Rein accompanying the detectives to the Grand Central Station where Cowl also was placed under arrest, of which there is no denial. As I read the complaint, there is no sufficient allegation that plaintiff was not in fact arrested. The allegation that the article was false must be coupled with the innuendo that the article meant and charged that plaintiff had been arrested and charged with criminally receiving stolen property and with participation in a criminal conspiracy and that plaintiff was an untrustworthy man; it constitutes a denial of the truth of the innuendo but not a denial of the fact that plaintiff had been placed under arrest upon some charge, which is the essential element in the alleged libel.

In my opinion, therefore, the order should be affirmed, with ten dollars costs and disbursements to respondent, and with leave to appellant to amend his complaint upon pay-

ment of such costs and ten dollars costs of motion at Special Term.

Laughlin, Merrell and Greenbaum, JJ., concur; Clarke, P. J., dissents.

Clarke, P. J. (dissenting):

I dissent. I think the complaint sufficiently alleges that the statement that the plaintiff had been arrested and charged with criminally receiving stolen property was false. It certainly is libelous to falsely state that a business man has been arrested charged with a crime.

Order affirmed, with ten dollars costs and disbursements, with leave to plaintiff to serve amended complaint on payment of said costs and ten dollars costs of motion at Special Term.