SANDERS v. EVENING NEWS ASSOCIATION.

1. RECOGNIZANCES—VALIDITY.
   A recognizance taken by a court without jurisdiction or by an officer without authority is void.

2. LIBEL AND SLANDER—TRUTH NOT LIBELOUS IN CIVIL ACTION.
   A publication which is true may not be made the basis for recovery in a civil action of libel.

3. SAME—ADMISSION OF TRUTH IN PLEADING.
   Admission of the truth of one of the publications upon which action for libel was based disentitled plaintiff from recovery of damages in consequence of such publication.

4. SAME—NEWSPAPER ARTICLE CONSTRUED AS A WHOLE.
   In determining whether the portion of a newspaper article relied upon was libelous in character, it must be read in con-

---

Truth as defense to action for defamation, see 3 Restatement, Torts, § 582.

nection with the subject matter of the articles as a whole and fairly and reasonably construed as to the purpose and meaning of the alleged libelous portion in publication.

5. SAME—EVIDENCE—NEWSPAPERS.
   To test its libelous quality, a publication is to be considered as a whole, including the character of the display of its headlines when the article is published in a newspaper, and the language employed therein.

6. JUDGES—PLACE FOR HOLDING COURT—LETTING TO BAIL.
   A judge of a court of common pleas is not in consequence thereof vested with any powers or duties which would justify him in assuming to hold court at a police station and letting to bail persons who had been picked up in raids upon illegal establishments and against whom charges of a bailable offense had not been preferred.

7. SAME—JUDICIAL POWER.
   A judicial officer can only exercise judicial power in a pending case; such power not being ubiquitous but a power of government which is conferred upon a person to exercise under definite restrictions and only in definite circumstances.

8. SAME—JUDICIAL POWER EXERCISED ONLY IN A PROCEEDING.
   A judge acts only in a proceeding which is brought before him, a proceeding instituted in the manner prescribed by law, and in the absence of any such cause pending, judicial power is inert.

9. RECOGNIZANCES—JUSTICES OF THE PEACE—COMMON PLEAS JUDGE —JURISDICTION.
   Recognizances may not be accepted by a justice of the peace or a common pleas judge except in a case actually pending.

10. BAIL—STATUTES—JURISDICTION OF JUDICIAL OFFICER.
    The statute empowering a judicial officer to let persons to bail does not authorize such judicial officer, as a conservator of the peace, to go to a police station and let to bail persons who have not been charged with a bailable offense (3 Comp. Laws 1929, § 17163).

11. RECOGNIZANCES—STATUTES—JUDICIAL OFFICERS.
    The statute authorizing a judicial officer to accept a recognizance does not authorize such judicial officer, as a conservator of the peace, to go to a police station and let to bail persons not even charged with a bailable offense (3 Comp. Laws 1929, § 17388).

12. LIBEL AND SLANDER—JUDICIAL OFFICERS—TRUTH.

Alleged libelous matter in newspaper article had to be read and construed in its application to plaintiff, a former common pleas judge, as a private individual, not as a public officer, since he acted without lawful authority, and, where the article truthfully charged he sought to obtain the summary release of two persons who had been taken into custody by law-enforcing officers, it was not libelous (3 Comp. Laws 1929, §§ 17163, 17388).

13. SAME—PRIVATE INDIVIDUAL'S CONDUCT TOWARD ANOTHER.

A course of action adopted by a private individual because he feels under obligation to certain other individuals does not of itself constitute misconduct, and a newspaper publication that an individual so acted is not libelous.

14. SAME—TRUTH—JUDICIAL OFFICER ACTING AS A PRIVATE INDIVIDUAL.

Publication as to a course of action adopted by plaintiff, a former common pleas judge acting as a private individual who felt under obligation so to act toward certain other individuals, or because he was over-impressed by judicial prerogatives, was not libelous where such appears to be the truth from plaintiff's own pleading.

15. SAME—TRUTH—COMMON PLEAS JUDGE ACTING AS PRIVATE INDIVIDUAL—CONSERVATOR OF THE PEACE—BAIL.

In the absence of a breach of the peace or other occasion or justification for the exercise of the powers of a conservator of the peace, the action of a common pleas judge who goes to police station and who lets to bail persons who have been picked up in a raid by law-enforcing officers but who have not been charged with a bailable offense is a nullity and a publication containing a truthful relation of such an event was not libelous (Const. 1908, art. 7, § 18).

Appeal from Wayne; Toms (Robert M.), J. Submitted October 4, 1945. (Docket No. 43, Calendar No. 42,972.) Decided January 7, 1946.

Case by Joseph Sanders against Evening News Association, a corporation, and another for libel. Motion to dismiss granted. Plaintiff appeals. Affirmed.

*Eugene G. Donohoe,* for plaintiff.

*Butzel, Eaman, Long, Gust & Kennedy (A. Hilliard Williams* and *Percy M. Lovett,* of counsel), for defendants.

NORTH, J.  This is an appeal from a judgment entered on defendants' motion dismissing plaintiff's declaration.  The cause arose from the alleged libelous nature of certain articles written by defendant Tendler and published in a newspaper owned by defendant The Evening News Association.  Defendant Tendler was a reporter and feature writer for the Detroit News and as such prepared a series of articles relating to certain practices then in vogue in some of the Detroit courts concerning releases granted to persons arrested for misdemeanors immediately after the arrest by police officers.  This series of articles was published by the Detroit News in the issues of July 27, 28, 29, 30 and 31 of 1942.  The plaintiff occupied the office of one of the judges of the common pleas court for the city of Detroit from April 10, 1933, to April 8, 1935, a period approximately seven years prior to the publication of the articles complained of.  Plaintiff began suit by summons July 21, 1943.  The first of the articles published was prefaced by the following:

"Editor's Note: This is the first of a series of articles by a veteran News reporter, who served for years on the police and court beats, dealing with the problem of overnight releases of persons arrested for misdemeanors—releases made by the police at the telephoned request of judges.  The News offers the series in a constructive effort to end the periodic feuds and scandals which result from the current system."

Each of the following publications was prefaced by note of like purport, and in each of them there was embodied the sentence last above quoted. The phase of law enforcement at which these articles were aimed and as to which a reformation was sought to be accomplished is to some extent indicated by the following portion of the article first published:

"Now, whether the prisoner spends the night in jail depends upon a courtesy arrangement between the police and judges which has no standing in law but which has existed on and off for 20 years. During the 'on' periods, the arrangement works somewhat as follows:

"The operators of the illegal establishment have a standing arrangement covering such arrests with one of a small group of lawyers and professional bondsmen whose business is confined largely to the criminal court. After the raid, the operator telephones his lawyer or bondsman, giving him the names of the patrons picked up in the raid. The lawyer or bondsman telephones a particular judge and the judge telephones the police to request that the prisoner be released overnight. The prisoner is released, and appears in court the next morning."

As bearing upon the legality of the practice and procedure above referred to, see *In re Mead,* 220 Mich. 480; wherein such order of a judge to release upon bond was held to be illegal. In his original declaration plaintiff makes the following allegations:

"Sixth: That on the 27th day of July, 1942, the defendants hereinbefore mentioned falsely and maliciously published of the plaintiff in said article the following words:

" 'Something always happens to embarrass the police and restore the old telephoned request system,

such as the time former Judge Joseph Sanders walked into Bethune Station one night, banged his gavel on the startled sergeant's desk and shouted:

" ' "Court's in session, the honorable Joseph Sanders presiding. Bring in Joe Doakes!" ' '

"Seventh: That on the 28th day of July, 1942, the defendants herein falsely and maliciously published of the plaintiff in said article the following words:

" 'But almost always there has been a judge or two, bound to a bondsman or lawyer either by affection or campaign contribution, or overimpressed by judicial prerogatives, who has turned the order (of the head of the police department not to release on telephone request) into a farce. Witness the case of * * * the impromptu court session held in Bethune Station by former Judge Joseph Sanders.' "

In an amended declaration plaintiff quotes more at length from the published articles and inserts innuendo in which he alleges defendants by the publication meant to convey that plaintiff was guilty of misfeasance, malfeasance and corrupt practices in the office of judge of the common pleas court, and thereby "maliciously to injure the plaintiff, in his good name, fame, and credit, and to bring him into public scandal, infamy and disgrace, and to public scorn, mockery, ridicule and contempt." By their answers to the original declaration and to the amended declaration defendants admit publishing the articles but they allege the quoted portion of the article published July 27th relative to plaintiff's attempting to hold court in the Bethune police station is true, and in effect defendants deny all the other material allegations in plaintiff's pleadings in consequence of which plaintiff charges libel.

Our review of this record brings the conclusion that under plaintiff's own pleadings he is not en-

titled to recover in consequence of the publication of
July 27, 1942. This is so because in his amended
declaration plaintiff admits the truth of the July
27th publication in so far as it could possibly tend
to support an action for libel. Since that publica-
tion was true, it was not libelous. *Sullings* v.
*Shakespeare,* 46 Mich. 408 (41 Am. Rep. 166). This
narrows the instant case down to the question of
whether the publication of July 28, 1942, set forth
in plaintiff's pleadings as hereinbefore quoted, can
justly be construed to constitute a publication of
libelous matter in consequence of which plaintiff
might establish by trial on the merits a right to re-
cover.

Notwithstanding the published articles are not set
forth in full in plaintiff's pleadings, apparently with
the consent of counsel, the trial judge had before
him, and considered when passing upon defendants'
motion to dismiss, the full context of all five articles;
and these articles are a part of the record on this
appeal. In determining whether the portion of the
article published on July 28th upon which plaintiff
relies was libelous in character, it must be read in
connection with the subject matter of the articles as
a whole and fairly and reasonably construed as to
the purpose and meaning of the alleged libelous por-
tion of the publication. *Moore* v. *Booth Publishing
Co.,* 216 Mich. 653; *Gustin* v. *Evening Press Co.,* 172
Mich. 311 (Ann. Cas. 1914 D, 95). In this latter
case a paragraph of the syllabus reads:

"To test its libelous quality, a publication is to
be considered as a whole, including the character of
the display of its headlines when the article is pub-
lished in a newspaper, and the language employed
therein."

Another important phase of this record is that
plaintiff is in error in asserting that as a judge of

the common pleas court he was within the exercise of his official powers and duties in attempting to hold court in the manner in which he did at the Bethune police station; and that defendants' publication of the article which challenged his right to do so and at least by inference imputed to him wrongful motives, was an attack upon him as a public official; and in effect charged him with malfeasance in office. As a matter of fact and law, notwithstanding plaintiff was a justice of the court of common pleas he was not in consequence thereof vested with any powers or duties which justified him in assuming the right to hold court at the Bethune station under the existing circumstances. As was said by the trial judge:

"Now, when the plaintiff assumed to exercise judicial power, or, if he objects to that phrase, the power to let to bail in the Bethune Police station, he was not acting officially, he was not acting judicially, nor within any concept of his powers. In the first place, there was no bailable offense charged in the manner provided by law. * * *

"A judicial officer can only exercise judicial power in a pending case. This power is not ubiquitous; it is a power of government which is conferred upon a person to exercise under definite restrictions and only in definite circumstances. A judge acts in a proceeding which is brought before him, a proceeding instituted in the manner prescribed by law. * * * Only in that manner can a judicial officer take cognizance of a cause or a proceeding * * * and in the absence of any such cause pending, judicial power is inert; in other words, judicial power is exercised in a cause or proceeding."

The foregoing is clearly in accord with our holding in *Clute* v. *Ionia Circuit Judge,* 131 Mich. 203, that a justice has no jurisdiction to accept a recognizance except in a case actually pending. Although he asserts the contrary, plaintiff's attempted course

of conduct was not authorized or justified either by section 17163 or section 17388 of 3 Comp. Laws 1929 (Stat. Ann. § 28.888 or § 28.1154). Neither section is applicable to the circumstances under which plaintiff contends that at the Bethune station he acted as a conservator of the peace.

In view of the foregoing it is obvious that the alleged libelous matter must be read and construed in its application to plaintiff as a private individual, not as a public officer. When it is so construed the publication of July 28th charged, and truthfully so, that plaintiff in his individual capacity went to the Bethune station and there by his course of conduct sought to obtain the summary release of two men who had been taken into custody by law-enforcing officers. In doing so plaintiff acted without lawful authority and it was not libelous for defendants to publish an article to that effect; and, as published in the article, in proceeding as plaintiff assumed to proceed at the Bethune station he "turned the order (of police executives not to release arrested persons except on court orders) into a farce." While plaintiff's method of procedure differed somewhat from the "telephone release system," nonetheless its effect was to perpetuate the same result by unlawfully and summarily releasing persons under arrest and in custody of law-enforcing officers. As plaintiff set forth in his amended declaration, "about 10 o'clock one night in the month of October, 1933," a lawyer applied to plaintiff to admit to bail two persons who were then under arrest. "That this plaintiff communicated with the police officer in charge of the said Bethune Police Station by telephone and was informed" that the two were in custody. Thereupon plaintiff went to the police station and attempted to hold court or to act in the capacity of a conservator of the peace and fix bail for the arrested

persons, but seemingly by a commotion which arose in the station plaintiff was prevented from so doing.

Nor, since plaintiff was acting in an individual and not in an official capacity, was the article of July 28th made libelous even if it is construed as charging therein that he was prompted to act as he did because of the possibility that he might consider himself in some way obligated to certain persons indicated. A course of action adopted by a private individual because he feels under obligation to certain other individuals does not of itself constitute misconduct, and a publication that an individual so acted is not libelous. Further, it was not libelous to say in the alternative of plaintiff ''or (he was) over-impressed by judicial prerogatives'' since such appears to be the truth from plaintiff's own pleading.

We do not overlook plaintiff's contention that as a judge of the court of common pleas he was vested with the powers of a conservator of the peace (Const. 1908, art. 7, § 18), and that he was acting in that capacity when he attempted to fix bail at the Bethune station. This contention is untenable because, as disclosed by plaintiff's amended declaration, there was no breach of the peace or other occasion or justification for exercise of the powers of a conservator of the peace. See *In re Sanderson,* 289 Mich. 165.

In view of our conclusion, other questions presented and contentions made in the briefs of the respective parties are nonessential to decision herein, and are not reviewed. The conclusion of the trial court that defendants' publication as set forth in plaintiff's pleadings, when fairly and reasonably construed, did not contain a defamatory falsehood concerning plaintiff was correct. The judgment en-

tered in the circuit court is affirmed, with costs of this Court to appellees.

BUTZEL, C. J., and CARR, BUSHNELL, SHARPE, BOYLES, REID, and STARR, JJ., concurred.